■ SEYMOUR TOREM et al., Respondents, v 564 CENTRAL AVENUE REST., INC., et al., Appellants, and HALLER & BURTIS, INC., Respondent, et al., Defendants.—Judgment, Supreme Court, New York County, entered upon a jury verdict on May 28, 1986 (John G. Dier, J.), in favor of plaintiff Seymour Torem in the sum of $97,300, and in favor of plaintiff Renee Torem for loss of services in the sum of $10,000, with liability apportioned 60% against defendant Long Island Lighting Co., Inc., and 40% against 564 Central Avenue Rest., Inc., unanimously reversed, on the law, and a new trial ordered on liability only, with costs to abide the event.

The evidence at trial showed that on the evening of November 6, 1982, Seymour Torem and his wife were patrons at the Werner Baer Steakhouse (Werner Baer) operated by defendant 564 Central Avenue Rest., Inc. in Cedarhurst, Long Island. Mr. Torem suffered serious personal injuries resulting from carbon monoxide gas leaking into the main dining room due to an inadequate ventilating system. We are satisfied that plaintiffs adduced sufficient evidence to sustain the jury verdict as to the liability in negligence of both Werner Baer and the Long Island Lighting Co., Inc. (LILCO), and their respective lack of due care in averting the development of this dangerous condition. However, there must be a new trial (limited to liability issues by reason of the stipulation of the parties that any jury award between $25,000 and $200,000 would not be reviewable on appeal) because of the following errors in the court's charge to the jury:

(1) <u>Burden of proof</u>: Undoubtedly through oversight, the court permitted the jury to retire without instructing them at all as to the applicable burden of proof in a civil action. When defendants noted their objection, the court recalled the jury and gave them the following instruction in toto: "We have got, members of the jury, most of our housekeeping out of the way, but in the event that I neglected to, I will charge you now that the burden of proof is on the plaintiff, who must prove to you by a fair preponderance of the credible evidence that their claims were true."

Despite the fact that all parties excepted to this truncated formulation, the court declined to amplify it. We find the instruction inadequate on its face *(see,* PJI 1:23). Among other things, it failed to advise the jury (a) that it was the quality of the evidence, rather than the number of witnesses or the length of their testimony, that would determine what should constitute a preponderance, (b) what plaintiffs were obliged to establish to sustain their burden of proof, and (c) that if the evidence should weigh evenly, it would be the jury's duty to return a verdict for defendants.

(2) <u>Immaterial theory of liability</u>: Inexplicably, the trial court instructed the jury on the duty required of a public utility distributing gas to maintain its installations based on New York Pattern Jury Instructions PJI 2:185, a part of PJI 2:187, and PJI 2:189. LILCO duly excepted to these instructions, which were plainly erroneous, since there was no evidence whatever that Mr. Torem's injuries had been caused by escaping natural gas, whether supplied by LILCO or anyone else. On the contrary, plaintiffs' proof was entirely directed to proving one hypothesis: that the exhaust and ventilation system of the restaurant was insufficient to dissipate the products of combustion arising from the restaurant boiler, cooking units, hot water heaters, etc., resulting in the collection of deadly carbon monoxide, a danger that would have been averted by a sufficient oxygen supply. These directions to the jury clearly invited speculation as to a theory of liability which bore no relation to the evidence. This error was further compounded by the failure of the court to "incorporate the factual contentions of the parties in respect of the legal principles charged." *(Arroyo v Judena Taxi,* 20 AD2d 888, 889; *see, Green v Downs,* 27 NY2d 205.)

(3) <u>Apportionment</u>: In the closing stage of the trial plaintiffs settled with defendant Long Island Duct Cleaning Com-

pany, Inc., also known as TCP (TCP), for the sum of $5,000. When plaintiffs' counsel placed this settlement on the record he stated his understanding that "all provisions of 15-108 of the General Obligations Law shall apply". Counsel for TCP agreed, and noted the acquiescence of LILCO and Werner Baer that the settlement was made in good faith. To be sure, the court had granted TCP's motion for dismissal as to it at the close of plaintiffs' case, but had, by expressly reserving decision at that time, left the cross claims of both LILCO and Werner Baer against TCP undetermined. Under General Obligations Law § 15-108 these defendants were entitled to a disposition of their cross claims by having the fault, if any, of TCP apportioned by the jury, and depending on the jury's response to that issue, a reduction in plaintiffs' damage award of either the settlement amount of $5,000, or TCP's equitably apportioned share of the damages, whichever turned out to be the larger sum. *(Driscoll v New York City Tr. Auth.,* 53 AD2d 391.) Also reflective of plaintiffs' acknowledgment that the settlement with TCP was to be subject to the provisions of the General Obligations Law is the fact that their counsel joined in the exceptions noted by LILCO and Werner Baer to the court's refusal to submit the apportionment issue to the jury. This omission must be rectified at the new trial. Concur—Carro, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.